[No. 7158. Decided February 14, 1908.]

# John Kendall et al., *Respondents*, v. Bill Joyce et al., *Appellants*.[1]

Waters—Appropriation—Priorities—Diligence. The rights of a settler upon public lands to divert the waters of a creek for the purpose of irrigation relate back to the date of the original appropriation, where the same was applied to beneficial uses with reasonable diligence.

Same—Notice of Appropriation—Effect. There being no law authorizing the filing of a notice of appropriation of waters on public lands, a settler acquires no rights by settlement on the land and filing such notice in 1887, where no diversion of the water or application to beneficial uses was made until 1897, when the same had already been duly appropriated by another.

Same—Failure to Post Notice. The failure of an appropriator of waters on public lands to post and record a notice of appropriation as required by Laws 1891, p. 327, does not affect the rights of an actual appropriator as against one subsequently acquiring title, the law being simply to apprise other contemplating appropriators of the first steps taken, and to preserve evidence thereof.

Same—Who Entitled to—Squatters—Statutes—Construction. Laws 1889-90, p. 706, assuring riparian rights for the purpose of irrigation to persons holding possessory rights to land abutting on natural streams, is simply declaratory of the existing law whereby title acquired under a patent relates back to the date of settlement; and does not enable a squatter, who abandons or sells out his possessory rights, to acquire any riparian rights, which are a mere incident to ownership of the soil and do not vest until patent issues.

Appeal from a judgment of the superior court for Okanogan county, Steiner, J., entered July 1, 1907, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, enjoining the diversion of the waters of a stream appropriated and used for irrigation purposes. Affirmed.

[1]Reported in 93 Pac. 1091.

*E. W. Taylor, J. W. Graham,* and *Harold Preston,* for appellants.

*A. W. Barry,* for respondents.

RUDKIN, J.—This was a controversy between two land owners over the right to use the waters of Johnson creek, a small stream flowing into the Okanogan river, in Okanogan county, for irrigation purposes. The rights of the respective parties are predicated upon the following facts: In the year 1895 the plaintiff John Kendall, a citizen of the United States above the age of twenty-one years, settled upon lots 3, 4, and 5, and the southwest quarter of the southeast quarter of section 25, and lot one and the northwest quarter of the northeast quarter of section 36, township 35, north, range 26 E., W. M., under the homestead laws of the United States. The lands embraced within the settlement were at that time unsurveyed public lands of the United States. Kendall continued to occupy and cultivate his claim from date of settlement until September 11, 1903, at which time he received a homestead patent therefor. Commencing with the year 1895 he diverted the waters of Johnson creek for the purpose of irrigating his orchard and meadow lands and for stock and domestic purposes. He increased the amount of his cultivated land from year to year until 1905, when he had fifty-five or sixty acres under irrigation and cultivation. The testimony showed that he proceeded in good faith and with reasonable diligence in bringing his land under cultivation and in applying the waters diverted to beneficial uses.

In the year 1877 one Philip Perkins settled upon the lands now owned by the defendants. On the 9th day of October of that year Perkins filed a notice of claim of water right with the county auditor of Okanogan county, claiming five hundred inches of water from Johnson creek at a certain point, and an additional five hundred inches at a certain other point. He continued to occupy the claim until about the year 1889,

when he was succeeded by one Warren Perkins. The latter occupied the claim until 1897, when he was succeeded by William Maretta, and Maretta in turn was succeeded by the defendant Joyce, in the year 1899. Joyce has since derived title to the original Perkins claim, in part under the homestead law and in part by scripping. Prior to the year 1897, not to exceed five or six acres of the Joyce lands were irrigated or cultivated. Under these facts the court below awarded to the defendants a prior right to use the water of the creek to the extent of seven miner's inches, measured under a four-inch pressure; to the plaintiffs one-third of one cubic foot per second of time, subject to the prior right of the defendants to the seven miner's inches; and enjoined the defendants from diverting the waters of the creek to the injury of the plaintiffs. From this judgment the defendants have appealed.

Under the facts stated, the respondents having diverted the waters of the creek in 1895 and applied the same to beneficial uses with reasonable diligence, their rights relate back to the date of their original appropriation. *Offield v. Ish*, 21 Wash. 277, 57 Pac. 809; *Longmire v. Smith*, 26 Wash. 439, 67 Pac. 246, 58 L. R. A. 308. It is equally apparent that Perkins acquired no rights by filing the notice of claim of water right in 1887. There was then no law authorizing such a notice. The notice was too indefinite to subserve any purpose, and the notice was not followed by a diversion of the water and its application to beneficial uses within a reasonable time. If, therefore, the rights of the parties depend upon the law of prior appropriation, it is manifest that the rights of the respondents are superior to those of the appellants except as to the quantity of water awarded to the latter by the court below. The appellants contend that the respondents acquired no rights as appropriators by reason of their failure to post and record a notice of their appropriation as required by the act of March, 1891, Laws of 1891, page 327, but,

"The statutes requiring the posting and recording of a notice are not intended to change the rule as to what consti-

tutes a valid appropriation, but simply, by requiring an appropriator to post and record a notice, to apprise other persons contemplating the diversion of water from the same stream that the appropriator has taken the first step toward securing his rights, and also to preserve the evidence thereof. It is accordingly held that, notwithstanding the existence of these statutes, a valid appropriation may be made by an actual diversion and use of the water without posting any notice; and one who fails to comply with the statute requiring notice, but actually diverts and uses the water, acquires a good title in the absence of any conflicting adverse rights, and cannot be deprived thereof by another who complies with the statute at a time subsequent to the former's completed diversion. Thus the failure of an actual appropriator of water upon the public domain to post a notice as required by law does not affect his right to the water as against one subsequently acquiring the land from the government." 17 Am. & Eng. Ency. Law (2d ed.), p. 498.

The appellants further contend that they acquired certain rights under § 2 of the act of March 4, 1890, Laws of 1889-90, page 706, as successors in interest of Warren Perkins who was occupying the land at the date of the passage of that act. The section referred to reads as follows:

"All persons who claim, own, or hold a possessory right or title to any land, or parcel of land, within the boundary of the state of Washington, when such lands, or any part of the same, are on the banks of any natural stream of water, shall be entitled to the use of any water of said stream, not otherwise appropriated, for the purposes of irrigation to the full extent of the soil for agricultural purposes."

This section was simply declaratory of the existing law, viz., that title acquired under a patent from the United States relates back to the date of settlement or filing. *Sturr v. Beck*, 133 U. S. 541, 10 Sup. Ct. 350, 33 L. Ed. 761. It has never been contended that a mere squatter on public land who subsequently sells out or abandons his claim acquires, or can acquire, riparian rights in a stream flowing through the land. Riparian rights are a mere incident to ownership in the

soil, and, while they may relate back by fiction of law to the date of settlement or filing, by virtue of the patent subsequently issued, yet they do not vest until patent issues, for up to that time the title to the land with all its incidents is vested in the United States, utterly beyond the power or control of state legislatures. And the party thereafter acquiring title from the government acquires the land with all its incidents. We are therefore of the opinion that the respondents have a valid claim to the waters awarded them by the court below, superior to any claim on the part of the appellants, and the judgment is accordingly affirmed.

HADLEY, C. J., FULLERTON, DUNBAR, MOUNT, and CROW, JJ., concur.